IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(MARSHALL DIVISION)

| | | |
|---|---|---|
| KKG, LLC, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. _____ |
| | § | |
| THE RANK GROUP, PLC, d/b/a | § | |
| "REYNOLDS KITCHENS" and/or | § | |
| "REYNOLDS GROUP", | § | |
| WALMART, INC., | § | |
| AMAZON.COM, INC. and | § | |
| M & Q PACKAGING, *et al,.* | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff KKG LLC ("KKG") files this suit against the various named entities in the caption of this case seeking monetary damages and permanent injunctive relief for patent infringement.

## Nature of the Case

1.    This is a re-filing of Eastern District of Texas Civil Action No. 2:07-CV-494 (TJW) [hereinafter "Prior Lawsuit"].  It is a suit for infringement of U.S. Patent No. 7,112,764 C1 [hereinafter the "'764 Patent"].

## Parties

2.    KKG is a New Mexico limited liability company.  Kristy Garcia is the sole managing member of KKG and the sole inventor of the '764 Patent.  The Plaintiff company KKG was formed to capitalize on Mrs. Garcia's invention, and all patent rights, including the right to bring suit for past and continuing infringement and to

collect damages for past and continuing infringement, were assigned by Mrs. Garcia to KKG.  The assignment is duly recorded in the U.S. Patent Office.

3.      The Rank Group, PLC is a privately owned, New Zealand-based, international company which operates various business entities worldwide.  Through its unincorporated division Reynolds Group Holdings, the Rank Group now owns a range of wrapping, packaging and consumer products which are generally marketed in the United States under the trademark or tradename "Reynolds Kitchens."  The products are marketed, *inter alia,* through the company owned and maintained website found at www.reynoldspkg.com/reynoldskitchens.en/home/asp.  Upon information and belief, the Rank Group's legal entity is a Delaware corporation and may be served by serving its registered agent, Registered Agents, Ltd. at 1220 N. Market Street, Suite 804, Wilmington, Delaware 19801.  The Rank Group's "Reynolds" entities named in this Complaint are alleged, upon information and belief, to be unincorporated divisions or d/b/a's in the overall Reynolds Kitchens business, and are generally referred to in the media as "Reynolds Group Holdings."  [For convenience and notice pleading purposes, all of these parties shall be designated collectively in this Complaint as "Reynolds Kitchens"].  If appropriate, an amended pleading will be filed to name the correct corporate entity or entities.

4.      Upon information and belief, Walmart Inc. is America's largest retailer of consumer goods.  It is a Delaware corporation with home offices located at 702 SE

8th Street, No. 555, Bentonville, Arkansas 72716-82052.  Walmart may be served by serving its registered agent CT Corporation System at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.      Amazon.com, Inc., which was founded in 1994 by Jeff Bezos, is well known through its website, www.amazon.com.   Upon information and belief, Amazon.com is America's largest on-line retailer of consumer products.   It is headquartered in the Beacon Hill section of Seattle, Washington.  Service may be completed on its registered agent, Corporation Service Company, 1013 Centre Road, Wilmington, Delaware 19805.

6.      M&Q Packaging is a Pennsylvania Corporation.  Its president is William H. Meneges and its offices are located at 1120 Welsh Road, Suite 170, North Wales, Pennsylvania 19454.  M&Q Packaging may be served by serving its registered office address at 7th Floor American BK Building Centre & W. Market Street, Pottsville Pennsylvania 17901.

### Jurisdiction and Venue

7.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.  The Court has subject matter jurisdiction over the patent infringement claims under 28 U.S.C. § 1338(a).  Additionally, although not necessary, the Court also has diversity jurisdiction under 28 U.S.C. § 1332.

8.     Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391, 1400(b).  This district is also the forum chosen by the parties in a March 27, 2009 Stipulation which dismissed the Prior Lawsuit without prejudice to re-filing.

### Facts

This suit has been necessitated by the following facts.

### Necessity – The "Mother of Invention"

9.     In the 1960's, emerging feminism and other changes in American society resulted in many families where both spouses worked.  Women in particular were challenged with the prospect of balancing their more traditional roles as wives and homemakers with the demands of full time jobs and careers.  Many women wanted to prepare home cooked meals for their families, but this was a difficult task while holding down a full time job as well.

10.     To help meet that challenge, an American company came up with a new idea.  "It all started with a simple bean-cooker; a glazed brown crock liner, white steel housing and aluminum lid."  *See*  http://www.crock-pot.com/CustomerService.aspx?id=abo.  The device allowed wives, mothers (and those men who chose) to prepare meals ahead of time and have them "slow-cooked."  This new form of cookware was introduced "to the trade in January 1971 and revolutionized the way Americans cooked for their families."  *Id*.  They called it the "Crock-Pot®" slow cooker and it was initially marketed by a company called "Rival."

Today, there are a number of other brands of these slow cookers, including Hamilton Beach, Cuisinart, GE, Proctor Silex and Magic Chef.

11.     Because of their simplicity of use, slow cookers have become very popular.  However, as anyone who has ever tried to clean a slow cooker after making chili con queso or barbeque ribs can tell you, in spite of their glazed cooking ceramic interiors, they are typically very difficult to clean, as the food cooked ("foodstuff") within the slow cooker usually tends to stick to the ceramic interior, thereby required sometimes significant elbow grease to clean the slow cooker.  The time and effort needed to clean these cookers after use was a problem in need of a solution.

12.     Kristy Garcia came up with the solution.  Mrs. Garcia is not only a wife, mother and homemaker, but also a working woman.  She is a real estate broker in Albuquerque, New Mexico.  Like many others, she used slow cookers to juggle her domestic and career responsibilities.  Like most, she was frustrated with the clean up problem.  But on Christmas Eve of 2002,  she came up with the solution – a durable disposable liner for a slow cooker.

13.     Shortly after Christmas Eve 2002, Mrs. Garcia retained a registered patent attorney in New Mexico to help her protect her invention and start the patent process.  Consequently, on February 27, 2003, Mrs. Garcia filed a U.S. Provisional Patent Application titled "Disposable Liner for Cookware" with the United States Patent and Trademark Office ("USPTO").

14.     Knowing that her invention may have significant consumer impact, Mrs. Garcia shortly thereafter sent out letters to several companies who might be interested in marketing her invention.  One of these letters was mailed by certified mail on June 18, 2003 to Reynolds Kitchens.  Mrs. Garcia's letter to Reynolds Kitchens specifically identified her name, and specifically identified that she had an invention for the crock pot industry for which she was seeking a business partner.[1]  On July 8, 2003, Reynolds Kitchens curtly responded to Mrs. Garcia's  letter, stating that it was not interested in her invention.  Not one to be discouraged, Mrs. Garcia continued the patent application process by filing a utility patent application on July 14, 2003 (one week after receiving Reynold's response letter).  The Patent Office assigned this application U.S. Application No. 10/619,314.

15.     Most patent applications processed by the USPTO are kept secret for the first 18 months after the patent application has been filed.  At 18 months after the first filing date, most patent applications are published by the USPTO for the entire world to see, even if the application is still pending.  The published patent application contains all parts of the utility patent application, including the applicant's name, address, drawings, and a full description of the invention for which patent protection is sought.  This information is also available online from any number of sources

---

[1] Prior to this time, Reynolds Kitchens did not market any type of crock pot liner. At that time, the Aluminum Corporation of America ("ALCOA") owned the entire "Reynolds" brand and associated companies until 2007 or 2008, when the "Reynolds" brand was acquired from ALCOA by The Rank Group.

(including the USPTO and numerous third party Internet vendors), and any part of a patent application can be searched by typing in key words (such as, for example, "Kristy Garcia" or "slow cooker", or the combination of both). With the information provided in Mrs. Garcia's June 18, 2003 letter, Mrs. Garcia's pending patent application could easily be found while it was pending, because her patent application was published on September 2, 2004. Thus, any party in the world, including the named Defendants, could thoroughly review Mrs. Garcia's pending patent application as early as September 2, 2004.

16.     Upon information and belief, Reynolds Kitchens knew that Mrs. Garcia had an invention for the crock pot industry because of her June 18, 2003 letter and waited to see if Mrs. Garcia decided to proceed with the patent application by monitoring USPTO patent publication data. Upon subsequently reviewing her published patent application as early as September 2, 2004, Reynolds Kitchens decided to capitalize on Mrs. Garcia's invention by, over the course of the next two years, developing a crock pot liner in accordance with Mrs. Garcia's patent application. During these two years, Reynolds Kitchens had adequate time to gain management approval for a crock pot liner, test appropriate materials for the liner, set up plans to market a crock pot liner to major grocery chains such as Walmart, Smiths, Albertsons and the like, find buyers, develop its product pitch and create manufacturing capability. In approximately April, 2006, while her patent application

was still pending, Mrs. Garcia was alarmed to find a commercial on a local Albuquerque television station solely featuring a Reynolds Kitchens product marketed as "Reynolds Slow Cook Liners.".   Shortly thereafter, Mrs. Garcia was equally astonished to find the Reynolds Slow Cook Liners product being prominently advertised in women's magazines (*e.g.*, Redbook, Good Housekeeping) and being offered for sale at local grocery stores.

17.     On Sept. 26, 2006, some five months after Reynolds Kitchens starting marketing its crock pot liner, the U.S. Patent Office issued Mrs. Garcia U.S. Patent No. 7,112,764 B2 (the "Original '764 Patent"), titled "Disposable Liner for Cookware".  A true and correct copy of the Original '764 Patent is attached as Exhibit A.  Shortly thereafter, Mrs. Garcia directed her patent attorney to send a letter to Reynolds Kitchens, seeking an amicable patent license for use of her technology, or a demand to stop production of its crock pot liners as infringing devices in the alternative.  Reynolds Kitchens ignored this letter, and never responded.

### Reynolds Kitchens' Purposeful Infringement

18.     During the Prior Lawsuit, Reynolds Kitchens/ALCOA identified that it had a project which it denominated as its "Slow Cooker Liner" project, but did not specify the starting date of this project or any other time frame information.  Reynolds Kitchens'/ALCOA's Rule 26 Disclosures in the Prior Litigation identified a number of people who were personally involved in that project.  Plaintiff will seek promptly

in this case to discover documents and depose those witnesses who had personal knowledge of the project.   However, for present purposes, Plaintiff alleges on information and belief that one or more of the people involved with Reynolds Kitchens' Slow Cooker Liner project was or were aware of Mrs. Garcia's pending patent application and/or her prior commercial overtures to Reynolds Kitchens.

### Garcia's First Quest for Justice

19.    Because Reynolds Kitchens never responded to KKG's offer of a reasonable business relationship, KKG, as assignee of the Original '764 Patent, filed suit against ALCOA in November 2007 in this Court.  ALCOA defended the Prior Lawsuit aggressively, contending *inter alia*, that Mrs. Garcia's invention had been "anticipated" by a disposable liner designed, manufactured, and/or marketed by Rival itself for a product called "Crock-Pot-Liners by Cook-in-a-Crock" (this product was previously unknown to Mrs. Garcia, and was not submitted to the Patent Office in the original patent application).  ALCOA further aggressively defended the suit by arguing that at least 16 other prior art patents, either in combination or alone, either anticipated or obviated the KKG invention (again, all of the prior art was previously unknown by Mrs. Garcia, and again , was not submitted to the Patent Office in the original patent application).

20.    Rather than fight  these issues in Court, Mrs. Garcia decided to let the experts at the U.S. Patent Office decide whether the KKG patent was valid in light of

ALCOA's arguments in the context of a "reexamination proceeding".  A patent reexamination is a process in which a previously issued United States patent is reviewed again by the U.S. Patent Office to determine if the patent is still valid.

21.   Consequently, on December 6, 2008, KKG filed an Request for *Ex Parte* Reexamination with the United States Patent Office.  As part of this Request, *inter alia*, KKG submitted copies of the Rival disposable liner packaging to the Patent Office, as well as all 16 prior art patents asserted by ALCOA in the Prior Lawsuit. While this reexamination process was on-going, the parties agreed, by stipulation dated March 27, 2009, to dismiss the Prior Lawsuit without prejudice, and further agreed that any further dispute concerning the Original '764 Patent (*e.g.*, infringement, invalidity or enforceability of the patent) would be adjudicated in this Court.  As a result, the Prior Lawsuit was dismissed by this Court without prejudice on May 7, 2009.

22.   Meanwhile, on March 3, 2009, the Patent Office granted the Request for Reexamination.  Significantly, the Patent Office never found the Rival liner to be a reason for invalidating the Original '764 Patent.  Rather, after review of the matter over the course of approximately ten months, a panel of three senior Patent Office Examiners determined that the KKG '764 patent was neither "obvious" nor "anticipated" by any of ALCOA's alleged prior art and was valid in light of ALCOA's prior art.  Indeed, the Patent Office even allowed KKG to add additional claims to

cover various other aspects of the KKG invention.  Consequently, on December 15, 2009, the U.S. Patent Office issued Ex Parte Reexamination Certificate 7,112,764 C1 (the '764 Patent), reaffirming the patentability of the Original '764 patent.  A true and correct copy of this Reexamination Certificate is attached as Exhibit B and incorporated herein by reference.

23.    Amazingly, even after it was made aware by letter dated January 19, 2010 of this Reexamination Certificate, Reynolds Kitchens persisted, and is persisting to this day, in infringing KKG's patent.  In light of its continuing and flagrant infringing activities despite knowledge of the validity of the '764 Patent, Reynolds Kitchens' infringement is willful and its conduct makes this case "exceptional" within the scope of 35 U.S.C. §§ 284, 285.

### Reynolds Kitchens' Admissions about this Invention

24.    Like all patented inventions in America, the '764 Patent enjoys a presumption of validity.  That presumption, which is especially strengthened by issuance after a reexamination proceeding by three senior examiners, may only be overcome by "clear and convincing" evidence.

25.    The benefits of the disposable liner invention have been publically admitted by Reynolds Kitchens on its own website, www.ReynoldsKitchens.com.  To sell these liners, Reynolds Kitchens touts the advantages of this product as follows:

> Reynolds Kitchens® Slow Cooker liners prevent a baked
> on mess and eliminate soaking and scrubbing slow cookers.

They are made with a special heat resistant material that holds in even the heartiest ingredients.  Simply place the liner into a slow-cooker, fill it, then cook as you normally would.  When you're done cooking, just toss away the liner and enjoy your meal without a thought to any messy clean up.

26.     The consumer comments, adopted and posted by Reynolds Kitchens, are even more highly complimentary, and demonstrate a strong belief by Reynolds Kitchens that this "invention" was neither "obvious" nor "anticipated" by anything known to people who are "skilled in the art."   For example, Wabbajane from Westchester, Pennsylvania, is quoted on the Reynolds Kitchens website as saying the disposable liner is the "BEST INVENTION SINCE SLICED BREAD!!!  IF YOU COOK IN A CROOK POT, YOU WANT THESE BAGS."  No Name from Guthrie, Oklahoma says it is "The best thing invented since the crock-pot."  And No Name from Macon, Missouri says "What a great invention.  Now I just have to throw the bag away instead of let the pot soak overnight and still scrub."  True and correct copies of these FAQ postings are attached as Exhibit C and incorporated herein by reference.

27.     By publishing these entries on its website, and particularly doing so after it was initially sued for infringement and advised of the reaffirmation of the patent's validity as a result of the reexamination proceeding,   Reynolds Kitchens has "manifested an adoption or belief" in their "truth," within the meaning of Rule 801(d)(2), FED. R. EVID.   Indeed, the Reynolds Kitchens' website specifically provides that "all user input to this site becomes the property of Reynolds Kitchens

Consumer Products and may be used by Reynolds Kitchens without compensation to the submitter."   Therefore, these endorsements are no longer the words of the customers, but rather, are the "property" of Reynolds Kitchens.

28.   In light of these admissions, Reynolds Kitchens is estopped to allege invalidity in this case, and any pleading by Reynolds Kitchens alleging invalidity would be in probable violation of Rule 11.

29.   Yet another comment from a Reynolds Kitchens' customer demonstrates the incredible demand and worth of this patent protected product, and militates in favor of a very significant royalty rate, which is alleged to be at least 35¢/liner.  No Name from Springfield, Missouri says that "65 cents per use for not needing to scrape and wash the caked on yuck from out of the pot is worth it."

### Other Manufacturer Infringers

30.   Upon information and belief, Reynolds Kitchens has the lion's share of the disposable slow cooker liner market in the United States.  Indeed, on information and belief, Reynolds Kitchens' market share of slow cooker liners is alleged to be in excess of 95% in the United States.  And, to the best of counsel's knowledge, Reynolds Kitchens is, as of the time of the filing of this Complaint,[2] the only willful infringer in America.

---

[2] Obviously, any company that persists in infringing activities after being made aware of this patent and this lawsuit would, from that time forward, be potentially in the category of a willful infringer.

31.    However, other companies are also manufacturing and marketing products that are believed to infringe on KKG's patent rights, and under United States patent laws, must either (a) stop doing so, or (b) pay a reasonable royalty for past and future infringement.  One of these other companies is M&Q Packaging, a company headquartered in Pennsylvania.  Through its website, www.pansaver.com, it markets a product throughout the United States – including in this District – called a EZ Clean Liners for slow cookers.  Upon information and belief, these EZ Clean Liners were not publicly available for sale prior to February 27, 2002 (one year prior to the '794 Patent's earliest filing date).  Upon information and belief, the EZ Clean Liners also infringe the '764 Patent.

## The Retailer Infringers

32.    Section 271 of the Patent Act provides that anyone who, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States … infringes the patent."  35 U.S.C. § 271(a).  Numerous retailers in America are currently selling, or offering to sell, infringing liners for slow cookers.  Among others, this Complaint names what is believed to be the largest physical retailer and the largest online retailer, *i.e.*, Walmart and Amazon.com, respectively.

33.    Amazon.com.  The biggest variety of infringing products is believed to be sold online by the Defendant Amazon.com.  Specifically, its website lists the following infringing products for sale:

Reynolds Kitchens Slow Cooker Liners

Kitchen Collection Crock Pot Liners

EZPans Crockpot Bags (no longer available)

PanSaver Slow Cooker Liners

Regency Slow Cooker Savers

34.     Walmart.   By contrast, Walmart appears to have an exclusive arrangement to market the Reynolds brand of infringing products.

## Causes of Action

At this point in time, KKG alleges a single, simple cause of action for patent infringement as follows:

**I.      PATENT INFRINGEMENT:**  (Paragraphs 1– 35 are hereby incorporated by reference).

35.     As authorized by 35 U.S.C. § 281 *et seq.*, KKG  hereby sues all named Defendants for infringement of one or more claims found in the '764 Patent.

36.     As a result of the Defendants' infringing activities, KKG has suffered actual damages in an amount to be determined at trial.  The Patent Act provides for an assessment of reasonable monetary damages "not less than a reasonable royalty." As noted above, in light of the innovativeness, usefulness and demand for this product, a reasonable royalty is alleged to be, at minimum, 35¢ per liner.

37.    Upon a finding of willful infringement by the trier of fact, the Court could, and should, treble the damages as against any infringer found to be "willful." The Court should also find this case to be an "exceptional" case – at least against Reynolds Kitchens – and should assess attorney's fees and costs incurred in prosecuting this action, as authorized by 28 U.S.C. §§ 284–285.

38.    Finally, to prevent future infringement, the Court should enjoin all defendants, and all those in concert with them, from making, using, selling or offering to sell infringing "disposable liners" for "slow cookers" or otherwise engaging in any other future infringing activities.

## Jury Trial Demand

39.    KKG hereby exercises its constitutional right to trial by Jury.

## Prayer for Relief

KKG prays for judgment against all Defendants for both legal and equitable relief, as well as statutory remedies, as set forth herein.

//
//
//
//
//
//
//
//
//
//
//
//

Respectfully submitted,

VICKERY, WALDNER & MALLIA, LLP

*/s/ Arnold Anderson (Andy) Vickery*
Arnold Anderson (Andy) Vickery
Texas Bar No. 20571800
Michael P. Mallia
Texas Bar No. 12866500
One Riverway, Suite 1150
Houston, TX  77056-1920
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: andy@justiceseekers.com
Email: mike@justiceseekers.com

*and*

SOUTHWEST INTELLECTUAL
 PROPERTY SVCS., LLC

*/s/ Kevin Lynn Wildenstein*
Kevin Lynn Wildenstein
9400 Holly Avenue NE, Building 4
Albuquerque, NM  87122
Telephone:  505-944-2500
Facsimile:  505-944-2501
Email:  klw@swiplaw.com