| | | |
|---|---|---|
| KKG, LLC, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| THE RANK GROUP, PLC, d/b/a REYNOLDS KITCHEND and/or REYNOLDS GROUP, REYNOLDS FOIL, INC., WALMART, INC., AMAZON.COM, INC. and M&Q PACKAGING CORPORATION, *et al.* | § § § § § § § § § | CASE NO. 2:11-cv-00012-JRG |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff KKG, LLC's Opening *Markman* Brief (Dkt. No. 86), Defendants' Responsive Claim Construction Brief (Dkt. No. 94), and Plaintiff's Amended Reply Brief (Dkt. No. 109).

The Court held a hearing on November 26, 2012, and issued a Provisional Opinion and Order on November 30, 2012 (Dkt. No. 131).

**Table of Contents**

**BACKGROUND** ................................................................................................................3
**LEGAL PRINCIPLES** .....................................................................................................3
**CONSTRUCTION OF AGREED TERMS** ....................................................................4
**CONSTRUCTION OF DISPUTED TERMS** .................................................................7

"liner for slow cooking cookware/crock pot liner/liner for a slow cook device/slow cook unit liner/liner for a slow cooker" ........................................................................................7

"formable/formed" ..........................................................................................................8

"substantially registers with" ..........................................................................................8

"durable" .........................................................................................................................9

"flange" ..........................................................................................................................10

"at least one gap" ..........................................................................................................10

**MOTION FOR RECONSIDERATION** ........................................................................11
**CONCLUSION** ..............................................................................................................13

## I. BACKGROUND

Plaintiff asserts United States Patent No. 7,112,764 ("the '764 Patent") titled "Disposable Liner for Cookware," issued on September 26, 2006, and bears a priority date of February 27, 2003. The '764 Patent relates generally to the culinary arts, and more specifically, to a cooking liner for use with a crock pot having a single interior cooking chamber, or like cooking devices.

KKG filed a request for *ex parte* reexamination of the '764 Patent on December 6, 2008, which was granted by the United States Patent and Trademark Office. The reexamination certificate issued on December 15, 2009 with claims 1, 4, 13, 16-22, 24 and 26 amended, claims 2, 3, 5-12, 14, 15, 23, 25, 30 and 31 intact, and new claims 32-39 added. The constructions of six groups of terms are in dispute before the Court.

## II. LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One

purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the best guide for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.*

Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

## III. CONSTRUCTION OF AGREED TERMS

The Court hereby adopts the following agreed construction:

| Term | Agreed Definition |
|---|---|
| "top rim" | "top portion of the liner that can have an optional, integrally formed flange". |

## IV. CONSTRUCTION OF DISPUTED TERMS

The Abstract of the '764 Patent states:

"A disposable insert or liner conformable to a slow cook cookware (such as, for example, a conventional crock pot or like slow cooking device) having a single interior cooking chamber. The liner is adapted to fit within the interior chamber of a crockpot so as to substantially be in adjacent contact with the crockpot interior chamber walls without interfering with the operation of the cooking device. The liner provides a single compartment which may be made of any material allowing heat conduction between the cookware and the liner. A suitable material may be a tear resistant aluminum foil to withstand typical food preparation in a crockpot. In one embodiment, the present invention includes a flange, notches, indentations or other formations which assist in the insertion and removal of the present invention in the cookware. The present invention advantageoiusly (sic) provides for a desirable cooking environment, allows easy removal of food from the crock pot and provides simplified cleaning of the crock pot."

**A. "liner for slow cooking cookware/crock pot liner/liner for a slow cook device/slow cook unit liner/liner for a slow cooker" (claims 4, 16, 17, 24, 29, 32, 37)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed, or alternatively, "a material which lines primarily the interior single chamber or cavity of a utensil, the utensil being specifically designed to cook food over a long period of time" | "a pre-formed metal foil insert with a defined structure for use in a slow cook device" |

(Dkt. No. 82, 5/18/12 Joint Claim Construction and Pre-Hearing Statement, p. 4.)

Defendants submit the patent specification makes clear that the inventor only contemplated a defined, pre-formed metal foil insert. (Dkt. No. 94, at 7.) In support, Defendant argues that every single embodiment discussed in the '764 patent is pre-formed with a pre-

7

defined structure, and the inventor herself agreed that the claimed liner must have a "defined structure." (*Id.* at 11.) However, there is nothing specific to this term that requires the liner to be a pre-formed metal foil. Indeed, the '764 Patent's Abstract expressly states that the liner can be made of "any material allowing heat conduction between the cookware and the liner."

The Court therefore hereby construes **"liner"** to mean **"a material which lines primarily the interior single chamber or cavity"**. The following corresponding terms are to be given their plain and ordinary meaning; **"slow cooking cookware," "crock pot," "slow cook device," "slow cook unit," and "slow cooker."**

B.      **"formable/formed" (all asserted independent claims)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [a liner] capable of being shaped into, or fit for, a single chamber or cavity of a utensil, the utensil being specifically designed to cook food over a long period of time | capable of maintaining its shape / shaped |

(Dkt. No. 82, 5/18/12 Joint Claim Construction and Pre-Hearing Statement, p. 5.)

While both proposals bear in common the notion of taking a shape, Defendants argue the specification makes clear that the liner is formed into a predefined shape. (Dkt. No. 94, at 14.) The Court does not find any such limitation appropriate. Rather, the prosecution history demonstrates that the applicant argued against prior art liners with structure that was "made to match," "fitted to the pans," and was otherwise "preformed." (Dkt. No. 109, at 7.) Therefore, the applicant did not intend for the liner to have a predefined structure.

The Court therefore hereby construes **"formable/formed"** to mean **"[a liner] capable of being shaped into, or fit for, a single chamber or cavity."**

C.      **"substantially registers with" (claims 4, 16, 19, 24, 29, 32)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
|  |  |

| | |
|---|---|
| [the liner's] characteristic of having largely, but not wholly correct, relative positioning or alignment between the liner and the interior single chamber or cavity surface of a utensil, the utensil being specifically designed to cook food over a long period of time | merges smoothly with |

(Dkt. No. 82, 5/18/12 Joint Claim Construction and Pre-Hearing Statement, p. 5.)

Defendants contend the terms "substantially registered with" and "merges smoothly with" are used interchangeably in the patent, so the interchangeable use of the two terms is akin to a definition equating the two." (Dkt. No. 94, at 18, citing *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009).) However, the specification in this case does not consistently use the two terms interchangeably. In fact, the term "merges smoothly with" only appears once in the specification, in the section for Detailed Description of Exemplary Embodiments. 3:37. Accordingly, the Court does not find the patentee acted as his own lexicographer to clearly set forth a definition of the disputed claim term in this instance.

The Court therefore hereby construes **"substantially registers with"** to mean **"substantially in contact with the interior chamber or cavity."**

### D. "durable" (claims 13, 25, 32)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [a liner] having the quality of no deterioration (such as not tearing or melting) over a long period of time | Capable of operation over a long period of time without any deterioration |

(Dkt. No. 82, 5/18/12 Joint Claim Construction and Pre-Hearing Statement, p. 5.)

Defendants contend that during reexamination of the '764 Patent, the patentee defined "durable" as "capable of operation over a long period of time without any deterioration," and that should be binding in litigation. (Dkt. No. 94, at 20.) Plaintiff responds that during the same reexamination proceeding, the applicant expressly argued against prior art liners that were not

"durable" for a variety of reasons, including melting. (Dkt. No. 109, at 6.) On balance, the Court does not find this term to be ambiguous or clearly defined in either the specification or prosecution history.

The Court therefore hereby construes the term **"durable"** to be given its plain and ordinary meaning.

### E. "Flange" (claims 4, 17, 24, 29)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [the liner's edge] having a strengthening rib | protrusion |

(Dkt. No. 82, 5/18/12 Joint Claim Construction and Pre-Hearing Statement, p. 5.)

Plaintiff argues its proposed construction by pointing to an embodiment in the specification that a flange "may contain a plurality of ribs such as those found on a traditional pie plate." (Dkt. No. 109, at 8.) However, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994). Defendants' proposed construction is more consistent with the specification's description of the flange.

The Court therefore hereby construes the term **"flange"** to mean **"protrusion."** As a matter of claim construction, rolled-up excess liner is not a flange.

### F. "at least one gap" (claims 4, 17, 24, 29, 32, 37)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [the liner's edge] having the characteristic of forming, at a minimum, at least one opening | at least one hole |

(Dkt. No. 82, 5/18/12 Joint Claim Construction and Pre-Hearing Statement, p. 5.)

Defendants urge a construction is necessary to make clear that there must be a defined hole in order to meet the "gap" limitation in the claims. (Dkt. No. 94, at 24.) Defendants also contend that the patent specification uses the terms "gap" and "hole" interchangeably, which is equivalent to a definition equating the two. (*Id.*) Again, the specification in this case does not consistently use the two terms interchangeably. In fact, the term "hole" appears only once in the specification, in the Detailed Description of Exemplary Embodiments section. 3:61. Accordingly, the Court does not find the patentee acted as his own lexicographer to clearly set forth a definition of the disputed claim term in this instance.

The Court therefore hereby construes **"at least one gap"** to mean **"at least one opening in the flange."**

## V. MOTION FOR RECONSIDERATION

Before the Court is also Plaintiff's Motion for Reconsideration of Provisional Opinion and Order (Dkt. No. 144) regarding the terms "flange" and "at least one gap." The grounds for considering a motion for reconsideration under Rule 59(e) include: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Plaintiff relies on the second and third prongs of Rule 59(e) in its Motion. (Dkt. No. 144, at 2-3.)

The Court finds that Plaintiff's Motion does not satisfy the requirements of Rule 59(e) to justify alteration of the Court's constructions as finalized herein in this Opinion and Order. "A Rule 56(e) motion is not a 'vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment' but instead has a 'narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly

discovered evidence.'" *Brown v. Baylor Healthcare Sys.*, 2009 WL 1342933 at *2 (S.D. Tex. May 11, 2009). KKG has not presented any newly discovered evidence in its Motion. Its arguments merely point to sections of the '764 Patent which was clearly before the Court throughout the *Markman* process. In addition, KKG's arguments on reconsideration could have been offered or raised in its claim construction briefing, during the *Markman* hearing, or before entry of the Court's Provisional Opinion and Order. Reconsideration of claim construction arguments premised solely on the intrinsic record, which was available at the time of the *Markman* hearing, and actually relied on by Plaintiff in asserting its claim construction positions, is not warranted.

Moreover, Plaintiff has not identified a manifest error of law that warrants reconsideration of the Court's Provisional Constructions. Even if reconsideration is granted in this instance, the Court's constructions are not affected by KKG's arguments. Regarding the term "flange," the Court found in its Provisional Opinion and Order, and reaffirms here, that as a matter of claim construction, rolled-up excess liner is not a flange. Plaintiff argues this construction is incorrect as a matter of law, citing to a sentence in the '764 Patent specification that states a flange "may be simply formed into a roll." 3:51-52. The Court disagrees. The Court's finding that rolled-up excess liner is not a flange does not preclude a flange from being simply formed into a roll. Thus, the Court is not persuaded to change its construction.

Plaintiff also argues a new construction of the term "at least one gap." (Dkt. No. 144, at 4-5.) However, Plaintiff's claim differentiation argument as to Claim 39 is of limited weight because Claim 39 recites other limitations, such as the gap being not adapted to form fit the slow cooker's upper perimeter lip. *Rembrandt Techs., LP v. Cablevision Sys. Corp.*, No. 2012-1022, 2012 WL 4017470, at *9 (Fed. Cir. Sept. 13, 2012) ("There is no reason to apply the doctrine of

claim differentiation, however, where, as here, the district court's construction does not render any claim redundant or superfluous."); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("Claim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, *and that limitation is the only meaningful difference between the two claims*.") (emphasis added). The Court is likewise not persuaded to deviate from its construction of "at least one gap." Accordingly, Plaintiff's Motion for Reconsideration is hereby **DENIED**.

## VI. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the '764 Patent. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**So ORDERED and SIGNED this 16th day of April, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE